UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LESTER P. IRVING, A31-288-133,

                    Petitioner,


          -v-                                          15-CV-824-JTC

LORETTA LYNCH, Attorney General
of the United States;

MICHAEL PHILIPS, Field Office Director
for Detention and Removal, Buffalo Field Office,
Bureau of Immigration and Customs
Enforcement;

Department of Homeland Security;

TODD TRYON, Facility Director,
Buffalo Federal Detention Facility; and

ORAL PASCOE, Security Attache for the
Jamaican Embassy,

                    Respondents.

_____


## <u>INTRODUCTION</u>

          Petitioner Lester P. Irving, an alien under a final immigration order of removal from

the United States, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2241 seeking release from detention in the custody of the United States Department of

Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending

his removal.  *See* Item 1.  As directed by this court's order entered October 6, 2015 (Item

2), respondent[1] has submitted an answer and return (Item 5), along with an accompanying memorandum of law (Item 6) in opposition to the petition, and petitioner has filed a reply (Item 7).

For the reasons that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

DHS records on file with the court show that petitioner, a native and citizen of Jamaica, was admitted to the United States at New York City on March 26, 1972, as a lawful permanent resident.   *See* Item 5-2 (Exh. A, attached to Declaration of DHS Deportation Officer Juanita Payan, Item 5-1), pp. 2, 23.  Petitioner has been convicted of several criminal offenses while a resident of the United States, including the following:

a.   On or about March 24, 1989, petitioner was convicted in the New York County Criminal Court, State of New York, of Criminal Possession of Marijuana in the 4th Degree, in violation of New York State Penal Law § 221.15.  For this offense, he was granted a conditional discharge.

b.   On or about May 2, 1996, petitioner was convicted in the New York County Criminal Court, State of New York, of Criminal Possession of a Controlled Substance in the 7th Degree, in violation of N.Y. Penal Law § 220.03 (2 counts).  For this offense, he was sentenced to a term of incarceration of 5 days for each count.

c.   On or about June 26, 1996, petitioner was convicted in the New York County Criminal Court, State of New York, of Intent to Obtain Transportation Without Paying, in violation of N.Y. Penal Law § 165.15.  For this offense, he was granted a conditional discharge.

d.   On or about June 29, 1996, petitioner was convicted in the Bronx County Criminal Court, State of New York, of Intent to Obtain Transportation Without

---

[1] The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

Paying, in violation of N.Y. Penal Law § 165.15. For this offense, he was granted a conditional discharge.

e.    On or about June 13, 2001, petitioner was convicted in the Utica City Court, State of New York, of Criminal Possession of Marijuana in the 4th Degree, in violation of N.Y. Penal Law § 221.15. For this offense, he was granted a conditional discharge.

f.    On or about July 22, 2009, petitioner was convicted in the Utica City Court, State of New York, of Petit Larceny, in violation of N.Y. Penal Law § 155.25. For this offense, he was sentenced to time served.

g.    On or about December 2, 2010, petitioner was convicted in the Oneida County Court, State of New York, of Attempted Criminal Contempt: Violating an Order of Protection; Causing Physical Injury. For this offense he was sentenced to a term of incarceration of 28 months to 7 years. Petitioner was also convicted in the Oneida County Court of Assault in the 3rd Degree: With Intent to Cause Physical Injury, in violation of N.Y. Penal Law § 120.00. For this offense, he was sentenced to a term of incarceration of 1 year.

Item 5-1, ¶ 6; Item 5-2, pp. 6, 7, 23, 26-28.

On March 23, 2011, while in the custody of the New York State Department of Corrections and Community Supervision ("NYSDOCCS") at the Groveland Correctional Facility in Sonyea, New York, petitioner was encountered by DHS agents assigned to the Buffalo Field Office. Upon verification of his immigration, an immigration detainer was lodged against him at the correctional facility. Item 5-1, ¶ 9.

On June 29, 2011, petitioner was served with a Notice to Appear ("NTA") charging him with being subject to removal from the United States, pursuant to INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), as an alien who has been convicted of a controlled substance offense, and pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony as defined in INA § 101(a)(43)(B), 8 U.S.C. § 1001(a)(43)(B), an offense relating to the illicit trafficking in a controlled substance. Item 5-1, ¶ 10; Item 5-2, pp. 21-24.

On April 2, 2013, IJ Roger F. Sagerman ordered petitioner removed from the United States to Jamaica.  Item 5-2, p. 20.  Petitioner filed a motion to reopen his immigration proceedings, which was denied by the IJ on May 29, 2013.  Item 5-2, pp. 18-19.  On June 26, 2013, petitioner filed an appeal of the IJ's denial of the motion to reopen with the BIA (Item 5-1, ¶ 12), and on July 15, 2013, he filed an appeal of the IJ's removal decision with the Board of Immigration Appeals ("BIA").  Item 5-1, ¶ 11.  On November 29, 2013, the BIA dismissed both appeals and affirmed the IJ's decisions.  Item 5-1, ¶ 13; Item 4-2, pp. 14-17.

On or about January 14, 2015, DHS sent a presentation packet to the Consulate General of Jamaica ("the Consulate") in New York City requesting that a travel document be issued for petitioner's removal.  Item 5-1, ¶ 14.

On February 17, 2015, petitioner was received into DHS custody upon the completion of his sentence with NYSDOCCS.  Item 5-1, ¶ 15.

On February 24, 2015, petitioner was interviewed by the Consulate's representative, Mr. Floyd Williams.  *See* Item 5-1, ¶ 16.  Also on February 24, 2015, DHS served petitioner with a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions that petitioner was required to complete within 30 days to assist in obtaining a travel document for his removal from the United States.  The warning form advised petitioner, among other things, of penalties under INA § 243, 8 U.S.C. § 1253, for conniving or conspiring to prevent or hamper his departure from the United States, and also advised him that pursuant to INA § 241(a)(1)(C), 8 U.S.C. § 1231(a)(1)(C), a failure to comply or provide sufficient evidence of his inability to comply

with the removal order may result in the extension of the removal period and subject him to further detention.  Item 5-1, ¶ 17; Item 5-2,  pp. 10-12.

DHS records show that from March 2, 2015 to present, DHS representatives have contacted both the Consulate and the Jamaican Embassy in Washington, D.C., on a number of occasions regarding the status of the request for a travel document for petitioner. Specifically, the case file notes show that contact with representatives of the Consulate and Embassy was attempted or made on each of the following dates in 2015: March 2, 18; April 6, 29; May 12; June 1, 9, 22;  July 13, 22, 27; August 25; September 9, 25; October 13; and November 3, 2015.  *See* Item 5-1, ¶ 18.

DHS case file notes also show that on July 22, 2015, petitioner was interviewed by Mr. Pascoe from the Jamaican Embassy.  *See id.*, ¶ 19.  During the interview, petitioner claimed (as he does in his petition; *see* Item 1, pp. 7, 13-15) that the medication needed to treat his medical condition is not available in Jamaica, and Mr. Pascoe informed petitioner that such medication was, in fact, available.  Item 5-1, ¶ 19.  The DHS case notes also report that on July 28, 2015, an email received from Mr. Pascoe stated that "issuance of a travel document is pending at this time due to a pending medical report from the Ministry of Health in Kingston, Jamaica."  *Id.*  On July 27, 2015, the deportation officer assigned to petitioner's case sent emails to the Jamaican Embassy and the Jamaican Consulate requesting an update on the status of the travel document, and that on July 28, 2015, the officer sent an email to Immigration and Customs Enforcement ("ICE") Health Services Corp. ("IHSC") "requesting status of a pending medical report that was requested by Mr. Pascoe."  *Id.*  The officer has also enlisted the assistance of DHS's Headquarters Travel Document Unit ("HQTDU") in an effort to facilitate the issuance of a travel document

for petitioner.  *Id.*, ¶ 22.  Subsequent case file notes report several additional contacts between DHS and the Jamaican authorities in September, October and November 2015, including a case note dated September 25, 2015, stating that an email was sent to the Jamaican Embassy requesting an update on the status of the travel document, and another note dated that same day, reporting "response received via email from Mr. Pascoe stating that there are no further updates on the status of the issuance of a travel document."  *Id.*, ¶ 20.

 In May 2015, in accordance with immigration regulations (*see* 8 C.F.R. § 241.4), DHS reviewed petitioner's custody status, and on May 18, 2015, petitioner was notified that DHS had determined to continue his detention based upon the totality of information available in petitioner's case indicating that he would be a threat to the community and a flight risk if he were to be released from custody.  Item 5-1, ¶ 21; Item 5-2, pp. 6-9.  An additional review of petitioner's custody status was conducted by DHS Headquarters Post Order Custody Review Unit ("HQPOCRU") in August 2015.  Item 5-1, ¶ 23.  As part of that review, a panel was convened at the Buffalo Federal Detention Facility in Batavia, New York, on August 11, 2015, to conduct an in-person interview of petitioner.  *Id.*  Following completion of the file review and interview, petitioner was notified on September 2, 2015, that DHS determined to continue his detention in DHS custody.  *Id.*, ¶ 24; Item 5-2, pp. 2-3.

On September 15, 2015, petitioner filed this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in post-removal-order custody is unlawful since it has exceeded the presumptively reasonable six-month period established under the due process standards set forth by the United States

Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' "  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).  Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings, and pending removal following the entry of a final order of removal, are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order.  In this case, petitioner's detention at the time he filed his habeas petition was pursuant to INA § 241(a), which authorizes detention of aliens after the issuance of a final removal order for a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i)  The date the order of removal becomes administratively final.
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory.  *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien.").  The statute also authorizes the Attorney General to continue detention of criminal aliens–*i.e.*, aliens ordered removed due to conviction of a crime (like petitioner here)–beyond the expiration of the ninety-day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal …."  INA § 241(a)(6).[2]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process.  The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States.  *Zadvydas*, 533 U.S. at 699-700.  Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …."  *Id.* at 701.

---

[2]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal.  Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1).  The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents."   8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the

country or countries in question.  Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released.  8 C.F.R. § 241.13(g)(1).  However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination.  *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

In this case, the ninety-day statutory removal period commenced on February 17, 2015, when petitioner was received into DHS custody upon his release from the custody of NYSDOCCS.  *See* Item 4-1, ¶ 12; 8 U.S.C. § 1231(a)(1)(B)(iii).  As an alien under a final order of removal, petitioner was subject to mandatory detention for the ninety-day removal period pursuant to 8 U.S.C. § 1231(a)(2). Thereafter, petitioner's continued detention was authorized by 8 U.S.C. § 1231(a)(6), since he is a criminal alien removable pursuant to 8 U.S.C. § 1227(a)(2), and determined upon regular review of his custody status to be a threat to the community and a flight risk if he were to be released.

Under *Zadvydas*, the first six months of detention following a final removal order are "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. Once the six-month period has passed, the burden shifts to the alien detainee to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Only if the alien makes this showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut" the alien's showing that there is no significant likelihood that he or she will be deported in the reasonably foreseeable future. *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights.").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*. The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to Jamaica in the reasonably foreseeable future. Petitioner has alleged that because Jamaica has not responded to his requests for information about medications "it would be safe to say that this medication does not exist in Jamaica." Item 1, p. 14. However, as indicated above, DHS records show that a representative of the Jamaican government advised petitioner during his July 2015 interview that the medications necessary to treat his medical condition were available in Jamaica, and DHS has taken appropriate steps to verify this information. *See* Item 5-1, ¶ 19.

The record further reflects that DHS undertook efforts to secure a travel document for petitioner's removal to Jamaica in anticipation of the commencement of the removal

period upon petitioner's release from state custody, and communications between DHS staff and the Consulate's representatives and have continued thereafter on a regular basis. Item 5-1, ¶¶ 14-20.

In addition, the available statistical evidence reveals that in recent years, DHS has successfully repatriated significant numbers of aliens to Jamaica, indicating no institutional barriers to petitioner's removal. For example, DHS reports show that in fiscal year ("FY") 2010, a total of 1,483 aliens were repatriated to Jamaica; in FY 2011, 1,475 aliens were repatriated to Jamaica; and in FY 2012, 1,311 aliens were repatriated to Jamaica. *See* DHS Yearbook of Immigration Statistics: 2012, Table 41: https://www.dhs.gov/yearbook-immigration-statistics-2012-enforcement-actions. These circumstances provide a reasonable basis for DHS's expectation that the verification required for the issuance of a travel document by the Jamaican government can be accomplished within the reasonably foreseeable future following confirmation of the requested medical information, after which time the necessary travel arrangements may be made for petitioner's release from custody and his repatriation to Jamaica.

Significantly, petitioner has provided no evidence to contradict this expectation, or to otherwise establish compliance with the requirements of the DHS regulations described above. Instead, petitioner relies solely on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas*. *See, e.g.*, Item 1, ¶¶ 14, 28, 32. However, several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time or the pendency of a request for a travel document, insufficient to meet the petitioner's initial burden to demonstrate no significant likelihood of removal under the

Supreme Court's holding in *Zadvydas*.  *See, e.g., Khaleque*, 2009 WL 81318, at *4 (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future …." *Zadvydas*, 533 U.S. at 701. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the

Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## CONCLUSION

For the foregoing reasons, the petition is denied, and the case is dismissed.  This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable.  *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

_____
\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: January 13, 2016
p:\pending\2015\15-824.2241.jan11.2016

-14-